# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39186**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Terence N. EKABE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 April 2018

————————————

*Military Judge:* Ryan A. Hendricks.

*Approved sentence:* Dishonorable discharge, confinement for 1 year and 6 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 15 September 2016 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major J. Ronald Steelman III, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the Court, in which Senior Judge HARDING and Judge HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with Appellant's pleas pursuant to a pretrial agreement, of absence without leave; assault consummated by a battery of his spouse; and service-discrediting conduct for throwing a dog against a wall, in violation of Articles 86, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 928, 934. The military judge sentenced Appellant to a dishonorable discharge, one year and six months of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence.[1]

On appeal, Appellant claims that he is entitled to new post-trial processing because the staff judge advocate's recommendation (SJAR) and the court-martial order (CMO) "inaccurately captured the findings." We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant, a naturalized citizen from the Republic of Cameroon, physically abused his Cameroonian wife over approximately four months after she joined him in New Jersey. During the last assault in which Appellant punched his wife in the eye, Appellant threw their two-month old pit bull against a wall. Appellant's wife photographed her own injuries and flew to Texas to escape the abuse.

While in Texas, Appellant's wife obtained a protective order against Appellant. The Air Force Office of Investigations (AFOSI) was notified of the domestic violence allegations against Appellant and interviewed Appellant, who admitted to physically abusing his wife while they lived together in New Jersey.

Three months after a second interview with AFOSI, Appellant requested and was granted leave in the local area in order to "rest and clear [his] head." After approximately two and a half weeks of local leave, Appellant left near his apartment building's dumpster four trash bags containing his uniform items and financial documents and wrote on a dry-erase board in his apartment a lengthy "suicide note" that confirmed his decision to choose "AWOL"

---

[1] The pretrial agreement limited any term of confinement to no more than 24 months. The agreement placed no other restrictions upon the sentence that could be approved by the convening authority.

over suicide. Appellant flew to Cameroon where he stayed with family for just over a month.

Appellant did not contact any Air Force officials during his absence but eventually flew back to North America and attempted to return to the United States on a bus from Toronto, Canada. Appellant was apprehended by border patrol agents during a passport check in New York. Appellant was subsequently ordered into pretrial confinement.

## II. DISCUSSION

In addition to the assault and service-discrediting conduct, Appellant was charged with desertion in violation of Article 85, UCMJ, 10 U.S.C. § 885, and rape in violation of Article 120, UCMJ, 10 U.S.C. § 920. In accordance with the pretrial agreement, Appellant pleaded guilty to absence without leave instead of desertion, all specifications of assault consummated by a battery with one exception and substitution, and the service-discrediting conduct of throwing the dog into a wall with excepted language. In exchange for Appellant's guilty pleas, the convening authority agreed, in pertinent part, to amend the desertion charge to the lesser included offense of absence without leave (terminated by apprehension) and to dismiss with prejudice the rape charge and its specifications.

Prior to trial, the Article 85, UCMJ, desertion charge was amended to allege a violation of Article 86, UCMJ, absence without leave; the rape charge and its specifications were dismissed; one assault consummated by a battery specification was amended with the agreed exception and substitution; and the Article 134, UCMJ, specification was amended to remove the agreed excepted language. After these changes were made to the charge sheet, the charges were renumbered to reflect the dismissal of the rape charge (originally Charge II). Appellant was subsequently arraigned and pleaded guilty to all charges and specifications.

After trial, the staff judge advocate (SJA) provided the convening authority with the SJAR. Throughout the SJAR, the SJA referenced the charges as originally numbered on the charge sheet. The SJA also stated that the rape charge and its specifications "were withdrawn" rather than dismissed with prejudice in accordance with the pretrial agreement. However, the SJAR referred the convening authority to the attached report of result of trial that correctly stated the charges at arraignment, Appellant's pleas, and the military judge's findings. The SJAR also correctly stated the convening authority's options for action on the findings and sentence. Appellant submitted a personal letter offering matters in extenuation and mitigation for the convening authority's consideration in clemency. Appellant did not identify any legal errors with the SJAR or request any specific relief from the convening au-

thority. The addendum to the SJAR restated the SJA's recommendation that the convening authority approve the adjudged sentence. The convening authority approved the adjudged sentence.

The resulting CMO contained several errors. The order erroneously stated Appellant's pleas and the findings as to the absence without leave charge and specification; Appellant's pleas and findings as to one of the assault specifications; and the findings for the specification of service-discrediting conduct.

Although "not disputing what happened at his trial," Appellant now claims that he was prejudiced in two ways by what he deems the "plain and obvious error" in the SJAR. First, Appellant maintains "the post-trial processing muddled whether the original Charge II was dismissed with prejudice as bargained for in the [pretrial agreement]." Second, Appellant notes "the convening authority affirmatively asserted he considered the incorrect SJAR." Accordingly, Appellant concludes he was denied procedural due process required by the Fifth Amendment[2] and requests we order new post-trial processing. We decline to do so.

The proper completion of post-trial processing is a question of law we review de novo. *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004)). "If defense counsel does not make a timely comment on an omission [or error] in the [SJAR], the error is waived unless it is prejudicial under a plain error analysis." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing Rule for Courts-Martial (R.C.M.) 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, Appellant must persuade this court that "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65).

To meet the third prong of the plain error test in the context of an SJAR error, Appellant must make "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The threshold is low, but there must be some colorable showing of possible prejudice. . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *Id.* at 437.

As an initial matter, we note that we are once again compelled to resolve a post-trial processing issue in which hours of appellate review could have been avoided with several minutes of attention to detail. However, recogniz-

---

[2] U.S. CONST. amend. V.

ing that the careless errors in the SJAR and CMO were plain and obvious, Appellant does not articulate how he may have been prejudiced. Prior to the initial session and arraignment in Appellant's court-martial, the Government, in accordance with the pretrial agreement, dismissed the rape charge and its specifications; amended the desertion charge; and changed one of the assault specifications. Accordingly, the rape charge and its specifications were not before Appellant's court-martial. Appellant was properly arraigned on the remaining charges and specifications, as amended and modified. The dismissed rape charge and its specifications were not and should not have been included in the CMO, as Appellant was not arraigned on those offenses.

The report of result of trial accurately captured the disposition of all charges and specifications that were before Appellant's court-martial. Importantly, the convening authority was referred to this correct document by the confusing SJAR. The SJAR's references to the originally numbered charges and specifications do not, in and of themselves, amount to some possible prejudice to Appellant. The convening authority referred the original charges, was party to the pretrial agreement, and considered a correct report of result of trial. Furthermore, the SJAR's mistaken comment about the rape charge being "withdrawn" rather than "dismissed" or "dismissed with prejudice" prior to Appellant's court-martial does not, without further explanation, amount to some showing of possible prejudice. The practical effect remained the same—that charge and its specifications were dismissed, were no longer before Appellant's court-martial, and were not presented to the convening authority for consideration when taking action. Moreover, Appellant makes no claim that the convening authority failed to abide by the terms of the pretrial agreement, that the convening authority intended not to comply with the agreement's terms, or that Appellant would have sought some sort of specific relief in the absence of the SJAR errors. Rather, Appellant complains that the convening authority's compliance with the pretrial agreement was somehow not captured in the post-trial documents. Although the Government's decision to dismiss, amend, and modify charges and specifications prior to Appellant's arraignment injected confusion during post-trial processing, Appellant raised no immediate objections, sought no specific relief from the convening authority who was correctly apprised of his authority on action, and offered no explanation as to how the post-trial processing would have proceeded differently—let alone more favorably to Appellant—absent the errors. *See United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988); *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996).

While we agree Appellant was entitled to action ordered by a properly advised convening authority, Appellant is nonetheless required on appeal to make some colorable showing that he suffered possible prejudice because of the post-trial processing errors in this case. Merely identifying errors and

concluding prejudice does not pass the low threshold. We find that Appellant failed to meet his burden.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[3]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[3] We order a corrected CMO to remedy the errors identified in this opinion.